# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2021-KA-00593-COA

**MARIO DAVIS A/K/A MARIO LYNARD DAVIS**                    **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                                            **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 04/06/2021 |
| TRIAL JUDGE: | HON. DEWEY KEY ARTHUR |
| COURT FROM WHICH APPEALED: | MADISON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: HUNTER NOLAN AIKENS |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: ALLISON KAY HARTMAN |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 10/18/2022 |
| MOTION FOR REHEARING FILED: | |

**BEFORE BARNES, C.J., McDONALD AND McCARTY, JJ.**

**McCARTY, J., FOR THE COURT:**

¶1.     A defendant was accused of holding a woman at gunpoint and later attacking her. He was indicted for kidnapping, sexual battery, and being a felon in possession of a firearm. The jury found him guilty only of being a felon in possession of a firearm. He appeals. We affirm.

## FACTS

¶2.     Mario Davis and Brandy Vaughn were in an unstable relationship for nearly three years. During their last break up, the two continued communicating with one another. Davis invited Vaughn to have lunch with him for his birthday. She agreed and met Davis on her

lunch break. Once she arrived at the restaurant, she got out of her car and greeted Davis with a hug. He insisted on sitting and talking to Vaughn before going inside the restaurant. Vaughn agreed, and the two sat and reminisced about the good times throughout their relationship. Vaughn was under the impression that she and Davis were on amicable terms.

¶3.     Concerned about time, Vaughn asked about going inside the restaurant to eat. Instead, Davis suggested the two simply order to go. As Vaughn was about to drive her car to the to-go area of the restaurant, Davis stopped her and said he "needed to get something from [his] car." He grabbed the item and got back into the car with Vaughn.

¶4.     At this point, according to Vaughn, a shocking turn of events occurred. When Davis got back in the car, he placed a gun "in his lap" and "pointed it at [her]." He told her, "[D]rive this car, B****, or I'll kill you." Scared and confused, Vaughn asked, "[W]hy are you this?" He replied, "I'm tired of your s***. I loved you and you wanted to play me." Vaughn drove out of the parking lot of the restaurant and followed Davis' demands.

¶5.     Davis then led Vaughn at gunpoint to the home of his friend, Shenika Cleveland. Still holding the gun, he led Vaughn to the door of the house and told her that "if [she] made any sudden moves, [he'd] kill her." She complied and went inside the house. Vaughn alleged Davis then sexually assaulted her.

¶6.     Once she was able to escape, Vaughn ran and jumped in her car. She drove down the road "blowing [her] horn" until she saw a police officer. She rolled down her window and asked, "Can you help me please?" The officer stopped, and she explained what had happened.

2

¶7. Davis subsequently was arrested and indicted for the crimes of kidnapping, sexual battery, and felon in possession of a firearm.

## PROCEDURAL HISTORY

¶8. At trial, the officer who saw Vaughn the night of the alleged attack testified. He stated he was driving down the road when he saw a "distraught" woman "waving her arm out the window yelling for help." The officer said he "got off [his] motorcycle" to assist her. He testified Vaughn told him she had been "held at gunpoint" and sexually assaulted. He included this information in his report and called a female officer for assistance.

¶9. This officer also testified. She said Vaughn also told her the details of the alleged attack, explaining that Davis held her at gunpoint and told her to "do exactly as he told her or he would shoot her." This officer also said Vaughn stated that Davis "held the gun against her side" and "walk[ed] her up to [a] house."

¶10. Then Davis' friend, Shenika Cleveland, testified. She testified for the State even though she admitted she and Davis had been friends for "about seven years."

¶11. When Ms. Cleveland was asked if she had ever seen Davis with a gun, she said, "Once." She testified she had seen Davis "a week or two" before the attack "in [her] living room" with a "handgun, black." She described the handgun as "standard size[d]."

¶12. Prior to trial, the State filed a "Notice of Intent to Introduce 404(b) Testimony," arguing that Ms. Cleveland's testimony was "admissible to show the intent plan, knowledge, identity, absence of mistake, and lack of accident of the Defendant." *See* MRE 404(b). Davis responded, stating the testimony would "greatly prejudice [him], and the probative

3

value of the evidence would not outweigh [its] prejudicial effect[.]"

¶13.	During a motion hearing before trial, the prosecution stated it would call Ms. Cleveland to testify she saw Davis with a black handgun "within a two-week period prior to the assault." The State further stated this testimony was relevant, probative, and within a recent timeframe. The defense argued that because there was no gun recovered and because Ms. Cleveland could only testify that the gun was black, the testimony was more prejudicial than probative.

¶14.	The trial court allowed the Rule 404(b) evidence, stating there is a "bevy of caselaw out there where people are seen with firearms sometime before the crime occurs, and that's admissible." The trial court concluded it was not "severe, unfair prejudice for someone to say, I saw the Defendant with a firearm - - this is the description - - a few weeks prior at the same location. For those reasons, the Court will allow it."

¶15.	At trial, Ms. Cleveland testified she had previously seen Davis with a gun. Counsel for Davis then asked to approach the bench. The trial court asked if this was the same objection made prior to trial. Counsel for Davis answered, "Yes." The trial court overruled the objection, again determining "the probative value outweigh[ed] any danger of unfair prejudice."

¶16.	After closing arguments, the jury was instructed, "If you find from the evidence in this case, beyond a reasonable doubt, that Mario Davis on or about the 8th of May 2019 . . . did unlawfully, knowingly and feloniously possess a firearm, one Taurus .22 caliber revolver . . . you shall find the defendant, Mario Davis, guilty[.]" During the jury's deliberation, a

4

note was set to the trial court. The note from the jurors asked if "[o]n the possession of a firearm charge, does it have to be exactly on the date" of the indictment. The court responded, "You have received all of the evidence and all of the instructions in the case. You are to continue your deliberations."

¶17. The jury acquitted Davis of the charges of kidnapping and sexual battery. However, Davis was found guilty of being a felon in possession of a firearm. He was sentenced to serve ten years in the custody of the Mississippi Department of Corrections. He now appeals.

## DISCUSSION

### I. The testimony of the witness was properly admitted.

¶18. Davis argues the trial court erred in allowing a witness to testify she saw him with a gun weeks before the incident.

¶19. "This Court will only overturn a trial court's ruling on the admissibility of evidence if it is shown that the trial court abused its discretion." *Lewis v. State*, 198 So. 3d 431, 433 (¶7) (Miss. Ct. App. 2016). "Further, a trial judge enjoys a great deal of discretion as to the relevancy and admissibility of evidence, and this Court will not reverse the trial court's ruling unless the judge abuses this discretion so as to be prejudicial to the accused." *Id*. at 433-34 (¶7).

¶20. Davis argues Ms. Cleveland's testimony that she saw him with a black handgun the week before should have been excluded. He argues the admission of this alleged prior bad act "irreparably prejudiced" his defense against the charge of felon in possession of a firearm.

5

¶21. "Generally, evidence of any crime other than the one for which the defendant is being tried is not admissible." *Welde v. State*, 3 So. 3d 113, 117 (¶14) (Miss. 2009). But "[t]here are exceptions" to this general prohibition. *Smith v. State*, 729 So. 2d 1191, 1206 (¶66) (Miss. 1998). Mississippi Rule of Evidence 404(b)(2) explains this exception. Evidence "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." MRE 404(b)(2).

¶22. A prior bad act may be admissible if it shows the opportunity for a defendant to commit the crime of which he is accused. *Townsend v. State*, 933 So. 2d 986, 991(¶14) (Miss. Ct. App. 2005). In that case, the defendant was driving down the road, saw a woman walking, and offered her a ride. *Id*. at 988 (¶2). She got into the car with him but later realized they were going in the wrong direction. *Id*. at (¶4). The defendant parked the car and then sexually assaulted her. *Id*. at 991 (¶12). The woman later escaped and made a report to the police. *Id*. at (¶5). At trial, the State admitted a stolen-car report that indicated Townsend had stolen the car he was driving when he attacked the victim. *Id*. at 990-91 (¶12).

¶23. On appeal, Townsend argued he was "entitled to a new trial because introduction of this evidence did nothing more than inflame the jury." *Id*. In response the State offered the evidence was permissible under the Rule 404(b) exceptions of identity and opportunity. *Id*.

¶24. We concluded the stolen-car report was "properly admitted to show opportunity for Townsend to commit the crimes charged." *Id*. at (¶14). In reaching this result, we focused

on the particular facts of the case; for instance, "Townsend did not own a car, and since, according to [the victim's] testimony and Townsend's admitted statement, the car was an integral part of the events which took place, the admission of the stolen car report allowed the jury to understand the events which occurred on the day in question." *Id*. We also pointed out the victim's testimony about the stolen vehicle—specifically, that Townsend "picked her up in the car, and raped her in and on the car." *Id*.

¶25. Regarding possible prejudice to Townsend, we held the prejudicial effect of the car report "paled in comparison to the testimony of repeated rape and sexual battery" told by the victim. *Id*. at 991-92 (¶15). Ultimately, we determined it was not an abuse of discretion for the trial court to admit the stolen car report. *Id*. at 992 (¶16).

¶26. The case at hand closely tracks both the facts in *Townsend* and its precedent regarding the opportunity exception. Like the defendant in that case, Davis was accused of using a handgun to kidnap and sexually assault Vaughn. She testified that she complied with Davis' demands due to her fear that he would kill her with the gun. Like the stolen-car report, Ms. Cleveland's eyewitness statement explained how Davis had the opportunity to commit the crimes of which he was charged. Since a prior bad act may be admissible if it explains the opportunity for a defendant to commit the crime of which he is accused, it was not an abuse of discretion to allow the jury to hear that Davis had been seen "a week or two" earlier with a handgun.

¶27. It is of no matter that the jury declined to find Davis guilty of the crimes of kidnapping and sexual battery. This assignment of error only asks whether the trial court erred in

admitting the eyewitness testimony that he had a handgun. Ms. Cleveland's testimony aided in showing Davis' opportunity to commit the alleged crimes. And Vaughn testified that Davis pulled a gun on her, demanded her to drive at gunpoint, and sexually assaulted her. Like in *Townsend*, the prejudicial effect of Ms. Cleveland's eyewitness testimony paled in comparison to the victim's account of the events.

¶28. Davis further argues the probative value of Ms. Cleveland's testimony was substantially outweighed by the dangers of unfair prejudice.

¶29. Our supreme court has applied a "two-part test to determine the admissibility of evidence under Rule 404(b)." *Welde*, 3 So. 3d at 117 (¶15). In addition to the requirement that evidence be offered to "prove a material issue other than the defendant's character," the "probative value of the evidence must [also] outweigh the prejudicial effect." *Id*. "Although evidence is permissible under Rule 404(b)(2), it may still be excluded if its probative value is outweighed by unfair prejudice." *Carter v. State*, 288 So. 3d 397, 401 (¶18) (Miss. Ct. App. 2019). Under Mississippi Rule of Evidence 403, the Court "may exclude relevant evidence if its probative value is *substantially outweighed* by a danger of . . . unfair prejudice." *Id*. (emphasis added).

¶30. The trial court properly employed the two-part analysis for admissibility per Rule 404(b) and the balancing test required by Rule 403. The trial court conducted an on-the-record balancing test and stated the court "believe[d] the probative value [of Ms. Cleveland's testimony] outweigh[ed] any danger of unfair prejudice." Therefore we find the trial court did not abuse its discretion by allowing the jury to hear Ms. Cleveland's testimony.

8

## II. The verdict was not against the overwhelming weight of the evidence.

¶31. Davis argues the jury's verdict was against the overwhelming weight of the evidence.

¶32. "When reviewing a challenge to the weight of the evidence, the Court will disturb a jury verdict only when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." *Wayne v. State*, 337 So. 3d 704, 715 (¶39) (Miss. Ct. App. 2022). "[W]e review the evidence in the light most favorable to the verdict." *Id*.

¶33. Here, the jury heard testimony from multiple witnesses. First, the jury heard the victim's testimony. She stated Davis grabbed a gun from his car, pointed it at her, and forced her to drive to his friend's home. Next, the jury heard two officers testify that Vaughn stated Davis held her at gunpoint. Also, the jury heard Ms. Cleveland testify she had seen Davis in her living room with a black, standard-sized handgun days before the incident.

¶34. The evidence of Davis' possession of the gun was not "so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." *Id*.

## CONCLUSION

¶35. We find the trial court did not abuse its discretion by allowing a witness to testify she had seen Davis with a handgun in the weeks prior to the crimes alleged by Vaughn. We also find the verdict was not against the overwhelming weight of the evidence.

¶36. **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., GREENLEE,**

9

**WESTBROOKS, McDONALD, LAWRENCE, SMITH AND EMFINGER, JJ., CONCUR.**